## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JAMES CLARKE, for himself and all others similarly situated, | ) ) ) | Case No. _____ |
| Plaintiff, | ) ) | |
| v. | ) ) | COLLECTIVE / CLASS ACTION |
| FLIK HOSPITALITY GROUP and COMPASS GROUP NORTH AMERICA, | ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

James Clarke ("Plaintiff"), by and through his undersigned counsel, hereby makes the following allegations against FLIK Hospitality Group and Compass Group North America ("Defendants") concerning his acts upon actual knowledge and concerning all other matters upon information, belief and the investigation of his counsel:

## NATURE OF THE ACTION

1.　　Plaintiff contends that Defendants have violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the New Jersey Wage and Hour Law, N.J. Stat. Ann. §§ 34:11-56a *et seq.* and N.J.A.C. 12:56-5.1 *et seq.* ("NJWHL") by knowingly suffering or permitting FLIK Culinary Associates to perform up to 90 minutes of off-the-clock pre-shift work, up to 30 minutes of off-the-clock meal break work and up to 60 minutes of off-the-clock post-shift work each day without properly tracking this work or paying any wages for it.

2.　　Plaintiff brings his FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b) for all people who have worked as FLIK Culinary Associates (including: Baker, Cook, Dishwasher, Food Service Utility, Food Service Worker and Steward) on a full-time, hourly basis in any week during the maximum limitations period.

3.       Plaintiff brings his NJWHL claim as a class action pursuant to Fed. R. Civ. P. 23 for all New Jersey residents who have worked as FLIK Culinary Associates (including: Baker, Cook, Dishwasher, Food Service Utility, Food Service Worker and Steward) on a full-time, hourly basis in any week during the maximum limitations period.

## JURISDICTION AND VENUE

4.       This Court has jurisdiction over this action pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §1331.

5.       This Court has supplemental jurisdiction over Plaintiff's New Jersey claim pursuant to 28 U.S.C. § 1367, because these claims arise from the same occurrence or transaction as Plaintiff's FLSA claim (i.e., Defendants' failure to pay wages for all hours worked) and are so related to this claim as to form part of the same case or controversy.

6.       Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2), because Plaintiff resides in this District, Plaintiff worked for Defendants in this District, Defendants engaged in the wrongful conduct at issue in this District, Plaintiff suffered the losses at issue in this District, Defendants have significant business contacts in this District and actions and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

7.       Plaintiff is an adult citizen of the State of New Jersey who resides in Essex County. In July 2013, FLIK hired Plaintiff to work as a full-time Culinary Associate (Cook) at the Bayer facility in Whippany, N.J.  Plaintiff worked in this job until September 2016 when he was transferred to work as a full-time Culinary Associate (Cook) at the Bayer facility in Moorestown, N.J.  FLIK scheduled Plaintiff to work five 8-hour shifts per week (40 hrs./wk.) from July 2013 to September 2014 and scheduled Plaintiff to work five 7.5-hour shifts per week (37.5 hrs./wk.) from

September 2014 to September 2016.  On September 22, 2016, Plaintiff left work on disability and has not returned to work for Defendants.  As discussed below, Plaintiff is personally familiar with, and was personally affected by, the policies and practices described in this Complaint.

8.      Defendant FLIK Hospitality Group ("FLIK") is a company with its corporate headquarters in Rye Brook, N.Y.  FLIK describes itself as: "one of the most recognized hospitality organizations with over 400 locations operating in 35 states with nearly 9,000 associates."  *See* http://www.flik-usa.com/about-us.html (accessed March 14, 2017).  FLIK hires, manages and jointly employs its associates under terms and conditions set by Compass.

9.      Defendant Compass Group North America ("Compass") is a company with its U.S. corporate headquarters in Charlotte, N.C.  Compass describes itself as: "the leading foodservice and support services company".  *See* http://www.compass-usa.com/companies/ (accessed March 14, 2017).  Compass identifies FLIK as one of its corporate subsidiaries.  *Id.* Another Compass subsidiary, Compass One LLC, also based in Charlotte, N.C., paid Plaintiff's wages throughout the relevant period.  Compass owns, actively oversees and materially contributes to FLIK's business operations, policies and practices.

## JOINT EMPLOYMENT ALLEGATIONS

10.     Throughout the relevant period, FLIK and Compass, acting in a joint venture or as joint employers, have formulated, approved, controlled and engaged in the improper practices described in this Complaint and, thus, are jointly responsible for these practices.

11.     Throughout the relevant period, FLIK and Compass have been an integrated enterprise with inter-related operations, systems, policies, practices and labor relations.  FLIK's website identifies FLIK as "part of Compass Group", *see* http://www.flik-usa.com/about-us.html,

and Compass' website identifies FLIK as one of "Our Companies" serving the "Business & Industry", "Education" and "Healthcare" sectors, *see* http://www.compass-usa.com/companies/.

12.     Throughout the relevant period, FLIK and Compass served as each other's agents and worked in concert to accomplish the actions pled here.

13.     Throughout the relevant period, Compass has been actively engaged in the day-to-day operation and management of FLIK's business operations, including the hiring of its employees.   In fact, clicking on the "Careers" link on the FLIK website, http://www.flik-usa.com/contact-us.html (accessed March 14, 2017), redirects to a "Compass Group" hiring site, http://www.altogethergreat.com/Pages/NewAssociates.aspx (accessed March 14, 2017), that enables searches for FLIK jobs and applications for employment with FLIK.   *See, e.g.,* https://hourlyjobs.compassgroupcareers.com/job/RAHWAY-FOOD-SERVICE-UTILITY-%28FULL-TIME%29-MONDAY-FRIDAY%21-Job-NJ-07065/395550900/ (listing for Food Service Utility job with FLIK in Rahway, N.J.).

14.     People who apply for FLIK Culinary Associate jobs online can do so through the Compass website.  *Id.*

15.     All FLIK Culinary Associates receive common training which has been developed jointly with Compass.

16.     All FLIK Culinary Associates are governed by similar policies and practices which have been developed jointly with Compass.

17.     All FLIK Culinary Associates use the same computerized timekeeping and payroll systems developed jointly with Compass.

18.     All FLIK Culinary Associates follow the same policies and practices relating to work hours, clocking–in and –out, meal breaks, overtime, timekeeping and compensation.

19.     All FLIK Culinary Associates are managed in the performance of their work according to criteria developed jointly with Compass.

20.     At the end of each pay period, all FLIK Culinary Associates receive wages that are calculated and paid jointly with Compass.

21.     Compass is a joint employer of all FLIK Culinary Associates because it has the right to: hire and fire them, set their wages, control their work, direct the manner in which they perform their work, inspect and manage their work, promulgate policies and procedures governing their employment (including the policies and practices relating to work hours, clocking–in and –out, meal breaks, overtime, timekeeping and compensation at issue here), enforce these policies and procedures, calculate the compensation they receive, and pay that compensation.

22.     Because of its active, ongoing role in FLIK's business operations, Compass is a joint employer of Plaintiff and the Class members as defined by the FLSA and NJWHL and is responsible for the improper acts and practices described in this Complaint.

## MATERIAL FACTS

23.     FLIK employs "nearly 9,000 associates" in 35 states, many of whom work on a full-time, hourly basis.  *See* http://www.flik-usa.com/about-us.html.

24.     Defendants maintain a corporate culture that prioritizes hard work, the highest quality results and customer satisfaction.  In keeping with these goals, Defendants routinely expect their Culinary Associates to handle an enormous (often unreasonable) workload, comply with an array of recipe, portioning, temperature, appearance and taste standards while also meeting the highest standards for food preparation, quality cleanliness and safety.

25.     All FLIK Culinary Associates are required to clock-in at their scheduled shift start-time, clock-out to start their meal break, clock-in after their meal break and clock-out at their scheduled shift end-time.

26.     As a term of their employment, all FLIK Culinary Associates are promised one 30-minute unpaid lunch break for each shift they work.  Having made this promise, Defendants are obligated to ensure either that FLIK Culinary Associates are completely relieved of all work-related duties during their unpaid lunch break, or that they accurately record their missed and shortened lunch breaks and are paid for this work.

27.     However, in keeping with their corporate culture and because of the demands of their business operations, Defendants knowingly suffer and permit FLIK Culinary Associates to begin work before their scheduled shift start-time, work during their meal breaks and work after their scheduled shift end-time.

## UNPAID PRE-SHIFT WORK

28.     Consistent with Defendants' corporate culture, and to meet Defendants' high expectations, goals and standards, FLIK managers routinely encourage and allow Culinary Associates to arrive at work as much as 90 minutes before their scheduled shift start-time each day to perform job-related tasks.

29.     FLIK managers do not allow Culinary Associates to clock-in before their scheduled shift start-time to create a contemporaneous record of their pre-shift work in Defendants' timekeeping system.

30.     FLIK managers have harassed, reprimanded and threatened workers who have tried to clock-in early to record their pre-shift work.  In some work locations, FLIK managers actually

program the time-clock to lock Culinary Associates out before their scheduled shift start-time to prevent any contemporaneous record of pre-shift work.

31.     Plaintiff typically arrived 10-30 minutes before his scheduled 6:15 A.M. shift start-time to set up his station, pull food items from walk-ins, pull food items from storage, collect cutting boards, collect garbage cans and trash bags, collect salad bar crooks, collect hotel pans, place ice in hotel pans, preheat ovens, prepare food and complete breakfast prep.

32.     Despite knowing that Plaintiff routinely began work well before his scheduled shift start-time, his managers (including GM Melissa Francia, GM Rocco Faccone, Executive Chef Joseph Gratale, Executive Sous Chef Brian and Manager Michael Degan) had no problem with Plaintiff working for free, told him not to clock-in early because he was not allowed to "steal time" from FLIK and threatened him with termination for trying to claim pre-shift pay.

33.     Plaintiff has seen many other Culinary Associates arrive between 15 and 90 minutes early each day to perform an array of off-the-clock work, including: setting up their stations, pulling food items from walk-ins, pulling food items from storage, collecting cutting boards, collecting garbage cans and trash bags, collecting salad bar crooks, collect hotel pans, place ice in hotel pans, preheating ovens, preparing food, completing breakfast prep and addressing kitchen hazards.

34.     Because of their access to staffing levels and work assignments and their familiarity with the nature of Culinary Associates' work, FLIK managers know that Culinary Associates routinely begin working before their scheduled shift start-time.  Despite this, FLIK managers have not stopped Culinary Associates from performing pre-shift work, required Culinary Associates to track their pre-shift work, or ensured Culinary Associates receive pay for their pre-shift work.

35. FLIK Culinary Associates so regularly perform pre-shift work with their managers' knowledge and approval that it has become an accepted, if not required, part of their jobs.

36. As a result, Defendants do not pay FLIK Culinary Associates for any of their pre-shift work.

## UNPAID MEAL BREAK WORK

37. Consistent with Defendants' corporate culture, and to meet Defendants' high expectations, goals and standards, FLIK managers routinely encourage and allow Culinary Associates to miss meal breaks and take shortened meal breaks to perform job-related tasks, but do not require or allow Culinary Associates to enter this meal break work time into Defendants' timekeeping system.

38. FLIK managers require Culinary Associates to clock-out for their meal break on every shift and do not allow return punches until 30 minutes have passed to avoid creating a contemporaneous record of meal break work in Defendants' timekeeping system.

39. FLIK managers have harassed, reprimanded and threatened workers who failed to clock-out for their meal break or tried to record less than a 30-minute meal break. In some work locations, FLIK managers actually program the time-clock to lock Culinary Associates out for 30 minutes after they clock-out for a meal break to prevent any contemporaneous record of shortened meal breaks.

40. Plaintiff typically missed his meal breaks or experienced shortened meal breaks about four times per week to perform an array of off-the-clock food preparation work, kitchen work, cleaning work, and work stocking the storeroom, café and café cook station.

41. Despite regularly seeing Plaintiff perform meal break work, his managers (including GM Melissa Francia, GM Rocco Faccone, Executive Chef Joseph Gratale, Manager

Chris Hepp, Executive Sous Chef Brian and Manager Michael Degan) had no problem with Plaintiff working for free, told him not to record his missed and shortened meal breaks because he was not allowed to "steal time" from FLIK and threatened him with termination for trying to claim meal break pay.

42.     Plaintiff has seen many other Culinary Associates work during their meal break each day, performing an array of off-the-clock food preparation work, kitchen work, cleaning work and stocking work.

43.     FLIK managers know Culinary Associates routinely work during their meal breaks because they regularly observe Culinary Associates performing meal break work and direct their performance of this work and are also aware of the staffing levels and work assignments that lead Culinary Associates to perform meal break work.  Despite this, FLIK managers have not stopped Culinary Associates from performing meal break work, required Culinary Associates to track their meal break work, or ensured Culinary Associates receive pay for their meal break work

44.     FLIK Culinary Associates so regularly perform meal break work with their managers' knowledge and approval that it has become an accepted, if not required, part of their jobs.

45.     As a result, Defendants do not pay Culinary Associates for any of their meal break work.

## UNPAID POST-SHIFT WORK

46.     Consistent with Defendants' corporate culture, and to meet Defendants' high expectations, goals and standards, FLIK managers routinely encourage and allow Culinary Associates to stay at work as much as 60 minutes past their scheduled shift end-time each day to perform job-related tasks like: preparing food for the next day, cleaning the kitchen, cleaning and

stocking the café and cleaning and stocking the café cook station, but do not require or allow Culinary Associates to enter this post-shift work time into Defendants' timekeeping system

47.      FLIK managers do not allow Culinary Associates to clock-out after their scheduled shift start-time to create a contemporaneous record of their post-shift work in Defendants' timekeeping system.

48.      FLIK managers have harassed, reprimanded and threatened workers who have tried to clock-out late to record their post-shift work.

49.      Plaintiff typically stayed at work 15-60 minutes past his scheduled 2:15 P.M. shift end-time to perform job-related tasks like: preparing food for the next day, cleaning his kitchen station, cleaning and stocking his café station; sweeping and mopping the kitchen and café floors and helping other associates with their work.

50.      Despite regularly seeing Plaintiff work well past his scheduled shift end-time, his managers (including Regional Director Chris Craven, GM Melissa Francia, GM Rocco Faccone, Executive Chef Joseph Gratale, Executive Sous Chef Brian, Manger Chef Jonathan, Manager Chris Hepp and Michael Degan) had no problem with Plaintiff working for free, told him not to clock-out late because he was not allowed to "steal time" from FLIK and threatened him with termination for trying to claim post-shift pay.

51.      Plaintiff has seen many other Culinary Associates stay between 15 minutes and 60 minutes late each day, performing an array of off-the-clock food preparation and kitchen work, breaking down their work stations, cleaning and stocking items.

52.      FLIK managers have repeatedly seen Culinary Associates working after the end of their scheduled shifts and know post-shift work is regularly occurring because of their access to staffing levels and work assignments and their familiarity with the nature of work Culinary

Associates do. Despite this, FLIK managers have not stopped Culinary Associates from performing post-shift work, required Culinary Associates to track their post-shift work, or ensured Culinary Associates were paid for their post-shift work.

53. FLIK Culinary Associates so regularly perform post-shift work with their managers' knowledge and approval that it has become an accepted, if not required, part of their jobs

54. As a result, Defendants do not pay Culinary Associates for any of their post-shift work.

## UNPAID TRAVEL / VEHICLE REIMBURSEMENTS

55. Defendants occasionally require Culinary Associates to use their personal vehicles to transport food, equipment, or even other employees between client locations, or to work at off-site events. FLIK Managers do not encourage Culinary Associates to submit their travel time or expenses on these occasions to keep Defendants' costs down. However, even when Culinary Associates submit their time, mileage, tolls, or other vehicle-related expenses for reimbursement, Defendants do not reliably pay Culinary Associates for their travel time, or reimburse their work-related expenses.

## ADDITIONAL MATERIAL FACTS

56. On a daily basis, FLIK Managers remind Culinary Associates about the importance of sticking to the Company budget, including the budget they claim is allocated for labor costs. FLIK Managers strongly warn against anything that interferes with the Company budget and specifically say people will be fired to cut costs if the labor budget is exceeded.

57. On a daily basis, FLIK Managers require Culinary Associates to complete an unreasonable amount of work with less help than is reasonably necessary in less time than the

work reasonably requires. If the work is not done as required, FLIK Managers routinely harass and belittle Culinary Associates, accuse them of poor time management, warn them they are not working hard enough and threaten them with reprimands or discipline.

58. Given Defendants' claimed budget limitations, the related short-staffing and workload issues they create and management's clear endorsement of unpaid work, many Culinary Associates believe they have to work for free if they want to keep their job or avoid responsibility for their co-workers being terminated.

59. Many of Defendants' Culinary Associates are vulnerable, exploitable immigrants who have little formal education and little understanding of their legal rights. These individuals depend on the money they earn from Defendants to support their families and – as Defendants well know – are far more concerned about losing their livelihood than they are about being made to work for free.

60. In 2014, Plaintiff complained to his FLIK managers (including Rocco Faccone, Melissa Francia and Michael Degan) and to the FLIK Human Resources Department (including Nicole Otis) about the unpaid pre-shift, meal break and post-shift work described above. In response, Plaintiff's managers harassed and threatened to fire him and no changes were made to any of the policies, practices, or systems described above.

61. In 2014, Plaintiff complained to FLIK Manager Rocco Faccone about the unpaid pre-shift, meal break and post-shift work described above. Mr. Faccone did not deny knowing that Plaintiff regularly performed unpaid pre-shift, meal break and post-shift work but, after discussing Defendants' policies with other Managers, Mr. Faccone answered Plaintiff's inquiry by explaining that, when Culinary Associates submit their weekly timesheet, they release FLIK of any wrongdoing because they have a chance to "correct" their claimed work hours. After providing

this explanation, Mr. Faccone continued to observe Plaintiff performing off-the-clock pre-shift, meal break and post-shift work on a daily basis without taking any steps to ensure this time was properly recorded or that Plaintiff received any wages for it.

62.     In 2016, Plaintiff complained to several FLIK managers, including GM-Rocco Faccone, Executive Chef Joseph Gratale, Chef Carmelo and Chef Holman, about the unpaid pre-shift, meal break and post-shift work described above.   These individuals dismissed Plaintiff's complaints, explained it was okay for Associates to work for free, and did nothing to change any of the policies, practices, or systems described above.

63.     Like many of the companies Defendants serve, the Bayer facility where Plaintiff worked maintains security checkpoints and video surveillance and uses electronic ID badges to track employee access.  As a result, much of the unpaid work at issue in this case – particularly Culinary Associates' pre- and post-shift work – may be supported by surveillance or access records maintained by Defendants' clients.

## FLSA COLLECTIVE ACTION ALLEGATIONS

64.     Plaintiff brings his FLSA claim as a collective action pursuant to 29 U.S.C. §216(b) for all people employed as FLIK Culinary Associates in any week during the maximum limitations period.

65.     Plaintiff belongs to the collective group he seeks to represent, because he:

a.      Worked as a FLIK Culinary Associate in two different locations during the relevant period; and

b.      Regularly performed extensive off-the-clock pre-shift, meal break and post-shift work with his managers' knowledge, was not allowed to track this work on FLIK's timekeeping system and received no wages for this work; and

      c.        was required to use his personal vehicle for work-related purposes, but was not fully reimbursed for his travel time or work-related expenses.

66.      Although Plaintiff and the collective group members potentially worked in different locations, or in different states, this action may be properly maintained as a collective action because, among other things:

      a.        they worked under the same joint employment scenario;

      b.        they worked under the same material terms and conditions of employment;

      c.        they were uniformly trained in Defendants' corporate culture of prioritizing hard work and customer satisfaction and placing the highest priority on excellent customer service;

      d.        they faced the threat of discipline for failing to prioritize their work over their ability to begin working at their scheduled shift start-time, take an uninterrupted meal break, or leave work at the scheduled end of their shift;

      e.        they faced the threat of discipline for failing to perform all work that was required of them;

      f.        they were governed by the same timekeeping policies, practices and systems;

      g.        they were governed by the same compensation policies, practices and systems;

      h.        they were governed by the same policies, practices and systems concerning work hours, meal breaks and the performance of all work required of them; and

i.      they were governed by the same policies, practices and systems concerning overtime hours and wages.

67.      Plaintiff and the collective group members do not meet any test for exemption under the FLSA.

68.      Plaintiff estimates that the collective group, including both current and former employees over the relevant period, will include several thousand members.  The precise number of collective group members should be readily available from Defendant's personnel, scheduling, time and payroll records, and from input received from the class members as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b).

## NEW JERSEY CLASS ACTION ALLEGATIONS

69.      Plaintiff brings his NJWHL claim as a class action pursuant to Fed. R. Civ. P. 23 for all New Jersey residents employed as FLIK Culinary Associates in any week during the maximum limitations period.

70.      Plaintiff belongs to the New Jersey Class, because he:

a.      Is a resident of New Jersey;

b.      Worked as a FLIK Culinary Associate in two different New Jersey locations during the relevant period;

c.      Regularly performed extensive off-the-clock pre-shift, meal break and post-shift work with his managers' knowledge, was not allowed to track this work on FLIK's timekeeping system and received no wages for this work; and

d.      was required to use his personal vehicle for work-related purposes, but was not fully reimbursed for his travel time or work-related expenses.

71.     Plaintiff's claim for violation of the NJWHL may be maintained on a class-wide basis because their claims satisfy the requirements of Fed. R. Civ. P. 23 as follows:

72.     The putative Class members are so numerous that their joinder would be impracticable.  Over the relevant period, Defendants are believed to have employed at least several hundred Culinary Associates in New Jersey.

73.     Material questions of law or fact common to the putative Class members predominate over any individual issues, including:

a.      whether Defendants required Plaintiff and the putative Class members to regularly perform off-the-clock pre-shift, meal break, or post-shift work;

b.      whether Defendants required Plaintiff and the putative Class members to properly track their pre-shift, meal break, or post-shift work;

c.      whether Defendants paid Plaintiff and the putative Class members any wages for their pre-shift, meal break, or post-shift work;

d.      whether Plaintiff and the putative Class members were required to use their personal vehicles for work-related purposes, but were not fully reimbursed for their travel time or work-related expenses;

e.      whether Defendants violated the NJWHL by failing to pay Plaintiff and the Class members for their pre-shift, meal break, or post-shift work; and

f.      whether Defendants should be required to pay compensatory damages, liquidated damages, interest, or attorneys' fees and costs for violating the NJWHL.

74.     Plaintiff's claims are typical of the claims belonging to the putative Class members in that they are similarly-situated employees who performed similar work under similar terms, conditions, policies and practices and, as a result, have been similarly harmed.

75.     This action may be properly maintained as a class action because Plaintiff will fairly and adequately assert and protect the interests of the putative Class members as follows:

        a.      there is no apparent conflict of interest between Plaintiff and the putative Class members;

        b.      Plaintiff's attorneys have significant experience in the litigation of complex civil and class action matters, and will adequately represent the interests of the putative Class members; and

        c.      Plaintiff has access to adequate financial resources to assure that the interests of the putative Class members will not be harmed because, consistent with New Jersey RPC 1.8(e)(1), Plaintiff's counsel have agreed to advance the costs and expenses of this litigation contingent upon the outcome of the case.

76.     This action may be properly maintained as a class action because it will provide a fair and efficient method for adjudication of the issues presented by this controversy as follows:

        a.      common questions of law or fact predominate over any questions affecting only individual members, as Plaintiff seeks to remedy a common legal grievance – Defendants' failure to pay all wages owed – for a Class of similarly-situated employees;

        b.      no difficulties are likely to be encountered in the management of this litigation as a class action, given that Defendants' computerized time and pay

records will assist in identifying the putative Class members and verifying the value of their claims;

  c. this forum is particularly appropriate for adjudicating these claims as this Court has significant experience with class action litigation; and

  d. the claims addressed in this Complaint are not too small to justify the expenses of class-wide litigation, nor are they likely to be so substantial as to require the litigation of individual claims.

77. Allowing Plaintiff's NJWHL claim to proceed as a class action will be superior to requiring the individual adjudication of each putative Class member's claim, since requiring hundreds of hourly-paid employees to file and litigate individual wage claims would cause an undue burden on Defendants, the putative Class members and this Court. Class action treatment will allow a large number of similarly-situated persons to prosecute their commons claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expenses if these claims were brought individually. Moreover, as the damages suffered by each putative Class member are relatively small, the expenses and burdens associated with individual litigation would make it difficult for plaintiffs to bring individual claims. Further, the presentation of separate actions by individual putative Class members could create a risk for inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of the putative Class members to protect their interests.

**COUNT I**
**Violation Of The FLSA**
**Failure To Pay Required Overtime Wages**
**(for the proposed multi-state collective)**

78.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

79.     Defendants are "employers" as defined by 29 U.S.C. § 203(d).

80.     Plaintiff and the collective group members are "employees" as defined by 29 U.S.C. § 203(e)(1).

81.     The wages Defendants paid to Plaintiff and the collective group members are "wages" as defined by 29 U.S.C. § 203(m).

82.     Defendants are an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

83.     Plaintiff and the collective group members, Defendants' Culinary Associates, are similarly situated individuals within the meaning of 29 U.S.C. §216(b).

84.     FLSA Section 207(a)(1) states that an employee must be paid an overtime premium rate, equal to at least 1½ times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

85.     29 U.S.C. § 216(b), expressly allows private plaintiffs to bring collective actions to enforce an employer's failure to comply with its requirements.

86.     Throughout the relevant period, Defendants were obligated to comply with the FLSA's requirements, Plaintiff and the collective group members were covered employees entitled to the FLSA's protections, and Plaintiff and the collective group members were not exempt from receiving wages required by the FLSA for any reason.

87.     Defendants violated the FLSA by knowingly failing to pay Plaintiff and the collective group members any wages for their overtime-eligible pre-shift, meal break and post-shift work.

88.     Defendants violated the FLSA by knowingly failing to maintain an accurate, contemporaneous record of the pre-shift, meal break and post-shift work Plaintiff and the collective group members performed.

89.     Defendants violated the FLSA by knowingly failing to pay Plaintiff and the collective group members any wages owed for the overtime-eligible travel-time they worked each week and failing to reimburse Plaintiff and the collective group members for the vehicle-related expenses they incurred for work purposes.

90.     Plaintiff and the collective group members have been harmed as a direct and proximate result of Defendants' unlawful conduct, because they have been deprived of wages owed for work they performed from which Defendants derived a direct and substantial benefit.

91.     By knowingly maintaining common policies, procedures and systems that prevented Plaintiff and the collective group members from accurately recording all their pre-shift, meal break and post-shift time and knowingly failing to pay Plaintiff and the collective group members all wages owed for the overtime-eligible work they performed, Defendants acted with reckless disregard of clearly applicable FLSA provisions.

92.     Defendants have no good faith justification or defense for the conduct detailed above, or for failing to pay Plaintiff and the collective group members all wages mandated by the FLSA.

**COUNT II**
**Violation Of The New Jersey Wage And Hour Law, N.J.S.A. §§ 34:11-56(a)** *et seq.*
**Failure To Pay Required Overtime Wages**
**(for the New Jersey Class)**

90.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

91.     Defendants are "employers" as defined by the NJWHL.  *See* N.J.S.A. § 34:11-56(a)(1)(g).

92.     Plaintiff and the New Jersey Class members are "employees" as defined by the NJWHL.  *See* N.J.S.A. § 34:11-56(a)(1)(h).

93.     The overtime wages sought by this claim are "wages" as defined by the NJWHL.  *See* N.J.S.A 34:11-56(a)(1)(d).

94.     Throughout the relevant period, Defendants have been subject to the NJWHL and the enabling Regulations noted here.

95.     The NJWHL provides that: "Every employer shall pay to each of his employees [*sic*] wages at a rate of not less than 1½ times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week...."  *See* N.J.S.A 34:11-56(a)(4).

96.     Defendants violated the NJWHL and its enabling Regulations by knowingly failing to pay Plaintiff and the New Jersey Class members any wages for their overtime-eligible pre-shift, meal break and post-shift work.

97.     Defendants violated the NJWHL by knowingly failing to maintain an accurate, contemporaneous record of the pre-shift, meal break and post-shift work Plaintiff and the New Jersey Class members performed.  *See* N.J.S.A 34:11-56(a)(20).

98.     Defendants violated the NJWHL by knowingly failing to pay Plaintiff and the New Jersey Class members any wages owed for the overtime-eligible travel-time they worked each week

and failing to reimburse Plaintiff and the New Jersey Class members for the vehicle-related expenses they incurred for work purposes.

99. Throughout the relevant period, Plaintiff and the New Jersey Class members were entitled to the protections provided by the NJWHL and its enabling Regulations, and were not exempt from these protections for any reason.

100. By engaging in the conduct alleged herein, Defendants acted willfully and/or with reckless disregard for Plaintiff's and the New Jersey Class members' rights under New Jersey Law.

101. N.J.S.A 34:11-56(a)(25) expressly allows private plaintiffs to bring a civil action to enforce an employers' failure to comply with the requirements of the Act.

102. N.J.S.A 34:11-56(a)(25) expressly provides that an agreement between the employer and employee to work for less than the wages required by the Act is not a defense to an action seeking to recover those unpaid wages.

### COUNT III
### Violation Of N.J.A.C. 12:56-5.1 *et seq.*
### Failure To Pay For All Hours Worked
### (for the New Jersey Class)

103. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

104. The New Jersey Wage and Hour Regulations establish rules to effectuate the NJWHL and provide sanctions for noncompliance, and are expressly applicable to wages and hours subject to the Act. *See* N.J.A.C. 12:56-1.1.

105. Plaintiff and the New Jersey Class members are "employees" as defined by N.J.A.C. 12:56-2.1.

106. Defendants are "employers" as defined by N.J.A.C. 12:56-2.1.

107. The overtime premium wages at issue in this case seeks are "wages" as defined by

N.J.A.C. 12:56-2.1.

108. The New Jersey Wage and Hour Regulations provide that a violation of the Act occurs when an employer: "Pays… wages at a rate less than the rate applicable under this chapter or any wage order issued pursuant thereto." *See* N.J.A.C. 12:56-1.2(a)(6).

109. The New Jersey Wage and Hour Regulations also provide that "Employees entitled to the benefits of the Act shall be paid for all hours worked." *See* N.J.A.C. 12:56-5.1.

110. Defendants violated the New Jersey Wage and Hour Regulations through common, company-wide policies that caused Plaintiff and the New Jersey Class members to be improperly denied required regular wages and/or overtime premium wages for pre-shift, meal break and post-shift hours they actually worked.

111. Defendants also violated the New Jersey Wage and Hour Regulations by failing to keep accurate contemporaneous records of all hours Plaintiff and New Jersey Class members worked. *See* N.J.A.C. 12:56-1.2(a)(2) and 12:56-4.1.

112. Throughout the relevant period, Defendants have been subject to the New Jersey Wage and Hour Regulations noted here and Plaintiff and the New Jersey Class members have not been exempt from application of these protections for any reason.

113. By engaging in the conduct alleged herein, Defendants have acted willfully and/or with reckless disregard for Plaintiff's and the New Jersey Class members' rights under New Jersey Law.

114. Plaintiff and the New Jersey Class members have been harmed as a direct and proximate result of Defendants' unlawful conduct, because they have been denied regular wages and/or overtime premium wages for work they performed that provided Defendants with a direct and substantial benefit.

115.    N.J.S.A 34:11-56a25 expressly allows private plaintiffs to bring a civil action to enforce their employer's failure to comply with the requirements of the Act.

116.    N.J.S.A 34:11-56a25 expressly provides that an agreement between the employer and employee to work for less than the wages required by the Act is not a defense to an action seeking to recover those unpaid wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for an Order:

a.    Approving this matter to proceed as an FLSA collective action with respect to Count I;

b.    Certifying this matter to proceed as a R.23 class action with respect to Counts II and III;

c.    Appointing Stephan Zouras LLP to serve as Class Counsel;

d.    Requiring Defendants to provide the names and current (or best known) mailing and e-mail addresses of all FLSA collective members;

e.    Authorizing Class Counsel to issue a notice informing the FLSA class members that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit;

f.    Finding that Defendant willfully violated the applicable provisions of the FLSA by failing to pay all required overtime wages to Plaintiff and the FLSA collective members;

g.    Finding that Defendant willfully violated the applicable provisions of the NJWHL by failing to pay all required wages to Plaintiff and the New Jersey Class members;

h.     Granting judgment in favor of Plaintiff and the FLSA collective members on Count I;

i.     Granting judgment in favor of Plaintiff and the New Jersey Class members on Counts II and III;

j.     Awarding all available compensatory damages in an amount to be determined;

k.     Awarding liquidated damages in an amount to be determined;

l.     Awarding pre-judgment interest on all compensatory damages due;

m.     Awarding a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

n.     Awarding equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

o.     Awarding any further relief the Court deems just, necessary and proper;

p.     Granting leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

q.     Maintaining jurisdiction over this action to ensure Defendants' compliance with the foregoing.

**JURY DEMAND**

Plaintiff hereby demands a jury trial in the above-captioned matter.


Respectfully submitted,

Dated: March 23, 2017

*/s/ David J. Cohen*
David J. Cohen
STEPHAN ZOURAS, LLP
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836
dcohen@stephanzouras.com

James B. Zouras (*pro hac* forthcoming)
Ryan F. Stephan (*pro hac* forthcoming)
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, IL 60601
312-233-1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com

*Attorneys for Plaintiff*