NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| JAMES CLARKE, for himself and all others similarly situated, | : : : : : | **Civil Action No. 17-1915 (SRC)** |
|  | : | **OPINION** |
| Plaintiff, | : : |  |
| v. | : : |  |
| FLIK INTERNATIONAL CORP. and COMPASS GROUP USA, INC., | : : : |  |
| Defendants. | : : : |  |

---

**CHESLER**, District Judge

     This matter comes before the Court on the motion by Plaintiff James Clarke ("Plaintiff" or "Clarke") for conditional certification of his Fair Labor Standards Act ("FLSA") claim as a collective action pursuant to 29 U.S.C. § 216(b). Defendants Flik International Corp. ("Flik") and Compass Group USA, Inc. ("Compass") (collectively "Defendants") have opposed the motion. The Court has opted to rule based on the papers submitted and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons expressed below, the Court will grant the motion in part and deny it in part. The Court approves that notice of this suit be disseminated to other similarly situated employees but limits the scope of that group, consistent with the following discussion.

# I.   BACKGROUND

Plaintiff Clarke has filed this suit to recover uncompensated wages on behalf of himself and a putative class of similarly situated current and former employees of Defendant Flik. Broadly, he alleges that Flik knowingly allowed its food service employees to work "off the clock," that is, work unrecorded hours, and that it failed to compensate employees for time and expenses associated with having to travel to work sites other than an employee's ordinary duty station. The following summary of facts is based on the Amended Complaint and the declarations and other material submitted by the parties in connection with the instant motion for conditional certification.

Defendant Flik is a New York-headquartered company engaged the business of providing on-site food and hospitality services to businesses across the country. Flik is a subsidiary of Defendant Compass, which is also engaged in the food service industry. According to the Amended Complaint, "Compass owns, actively oversees and materially contributes to FLIK's business operations, policies and practices." (Am. Compl. ¶ 9.) Among other things, Flik operates food services for corporate offices, airport lounges, and conference centers. These on-site locations run by Flik are known as "cost centers." The sector of the Flik corporation relevant to this suit includes 661 cost centers, which are located in 33 states and provide services to over 200 clients. According to declarations submitted by Flik cost center managers, staffing and scheduling varies across cost centers, depending on client needs and the work involved at a particular location. The largest centers, such as corporate cafes, may employ up to approximately 70 employees "non-exempt" under FLSA, whereas the smallest may employ just a few. They also note that scheduling of non-exempt employees is handled locally, not on a corporate-wide

basis. A cost center will be overseen by a general manager, who reports up to a district or regional manager, with the reporting structure depending on the region.

Plaintiff Clarke was a full-time employee of Flik from 2013 to 2016. He states that he held the job title of "Cook," although Clarke's human resources file maintained by Flik notes his position title as "Cold Food (Salad)." For almost the entire duration of his Flik employment, Clarke was stationed at a cost center in Whippany, New Jersey for Flik client Bayer. (Hereinafter, this cost center will be referred to as "Bayer Whippany.") Bayer Whippany includes a corporate café, company store and coffee bar, staffed by approximately 30 non-exempt employees. According to Bayer Whippany manager, Melissa Francia, starting times for employees at that location vary from approximately 6 a.m. to 7:30 a.m.; ending times vary from approximately 2:15 p.m. to 4:30 p.m.; and lunch breaks are staggered. The Executive Chef and Sous Chefs at Bayer Whippany are responsible for scheduling kitchen staff. Clarke worked at Bayer Whippany until August 2016, when effective August 21, 2016, he was transferred to the cost enter at Bayer's Morristown office ("Bayer Morristown"). Bayer Morristown is a smaller cost center than Clarke's previous placement and consists of only a corporate café staffed by four non-exempt Flik employees. Bayer Morristown's manager, Bob Remner, handles the scheduling for those employees. Clarke worked at Bayer Morristown until September 21, 2016, when he took a medical leave of absence.

In this action, Clarke claims that he, and various other individuals employed by Defendants, routinely worked off-the-clock up to 60 minutes before their shifts, during meal breaks, and up to 60 minutes after their shifts. According to Clarke, the need to perform this additional, off-shift work arose in September 2014, when Flik "cut many employees' hours by about 10% as part of a wide-spread effort to reduce labor costs." (Clarke Decl., dated May 1,

2018, ¶ 3.) He further explains that this reduction in hours overburdened employees because it "did not include a reduction in job duties, meaning employees had to do the same amount of work in fewer on-the-clock hours." (Id.) According to Plaintiff, managers knew that employees were working before and after their shifts, as well as during scheduled meal breaks, but refused to allow employees to clock in before the official start of scheduled shifts or clock out at time later than the end of a shift. He states that "managers have harassed, reprimanded and threatened employees who have tried" to clock-in or clock-out in a way that would accurately account for pre- and post-shift work. (Id. ¶¶ 11, 17.)

As to his personal experience with alleged off-the-clock work, Plaintiff states that throughout his employment, he was required to clock in and out at set times to correspond to the shifts he was assigned, despite the fact that he typically began working up to 30 minutes before his scheduled start time and continued working for 15 to 60 minutes following the recorded end of his shift. He also alleges that he worked during meal breaks 80% of the time, that is, about four of five days per week, but was required by managers to clock out so that the timeclock would reflect that he had taken a full thirty-minute meal break. As to the experience of others, Plaintiff claims that, during the three years he worked for Flik, he personally observed dozens of other employees perform pre-shift, post-shift and meal-break work. He further claims that, like him, those other employees were not permitted to record or claim such work and therefore were not compensated for their off-the-clock work.

Plaintiff also bases his FLSA claim on the contention that Defendants knowingly failed to reimburse his and the putative class members' work-related travel expenses or pay wages for their overtime-eligible travel. Clarke states that during the three years he worked for Flik, managers asked him to work at off-site locations and required him to use his personal vehicle to

transport other Flik employees as well as equipment and other materials to those sites. He alleges that he was not compensated for work-related travel time and was not reimbursed for expenses incurred in using his personal vehicle to transport employees and equipment.

Clarke asserts that the foregoing conduct by Defendants affected many employees who worked in Flik's nationwide cost centers on a full-time hourly basis under various food service job titles. He initiated this action on behalf of himself and others, claiming violations of the FLSA as well as the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56(a), et seq. ("NJWHL"). Plaintiff seeks to prosecute the FLSA claim as a collective action under Section 216(b) of that statute and the NJWHL claim as a class action under Federal Rule of Civil Procedure 23. He defines the putative class as "all people who have worked in FLIK cost centers under the following seven job titles during any workweek in the past three years: Cook, Grill Cook, Prep Cook, Sr. Cook, Food Svc Utility (a/k/a Utility Associate), Food Svc Worker and Food Svc Worker/Cashier (a/k/a Cashier/Food Service Worker)." (Pl. Mem. at 1, ECF 35-1.) According to Plaintiff's Memorandum of Law, Flik workers holding these seven job titles include over 2,000 current Flik employees working in cost centers across the country as well as an as-yet unknown, but ascertainable number of former employees. For convenience, the Court will at times refer to the putative class as the "Flik food service employees."

## II. DISCUSSION

### A. FLSA Conditional Certification Standard

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." Genesis Healthcare v. Symczyk, 569 U.S. 66, 69 (2013). The statute mandates that employers pay employees for all hours worked, including a "time-and-

one-half" overtime premium for all hours worked over 40 hours in one workweek. 29 U.S.C. §§ 206-207. Under Department of Labor regulations, an employer must compensate employees if it "knows or has reason to believe that [the employee] is continuing to work . . . ." 29 C.F.R. § 785.11; see also Mumbower v. Callicott, 526 F.2d 1183, 1188 (8th Cir. 1975) ("The term 'work' is not defined in the FLSA, but it is settled that duties performed by an employee before and after scheduled hours, even if not requested, must be compensated if the employer 'knows or has reason to believe' the employee is continuing to work, 29 C.F.R. § 785.11 (1974), and the duties are an 'integral and indispensable part' of the employee's principal work activity.").

The statute provides a "collective action" mechanism, a form of group litigation which allows an employee plaintiff asserting an FLSA claim to bring the action "on behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b); see also Halle v. West Penn Allegheny Health Sys. Inc., 842 F.3d 215, 223 (3d Cir. 2016) (explaining the collective action device provided under the FLSA). In order to become party plaintiffs to an FLSA collective action lawsuit, such similarly situated employees must affirmatively "opt in" by filing express, written consents. 29 U.S.C. § 216(b) ("[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). While a collective action under Section 216(b) of the FLSA has a representational quality resembling the characteristics associated with class actions brought pursuant to Federal Rule of Civil Procedure 23, the Supreme Court has stressed that Rule 23 class actions and FLSA collective actions are "fundamentally different." Genesis Healthcare, 569 U.S. at 74. Nevertheless, courts dealing with FLSA collective actions have borrowed terminology from Rule 23 jurisprudence, for example, referring to the group of initially unnamed employees who are purportedly "similarly situated" to the named plaintiff as a

"class." See Halle, 842 F.3d at 223 (noting the use of Rule 23 class action terminology in FLSA collective action suits).

To determine whether an FLSA suit may proceed as a collective action under Section 216(b) of the statute, district courts in the Third Circuit employ a two-step process. Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 (3d Cir. 2012); see also Halle, 842 F.3d at 224 (holding same). At the first step, known as conditional certification, the court makes a preliminary determination concerning whether the employees identified in the collective group are sufficiently "similarly situated" to the named plaintiff. Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 192 (3d Cir. 2011), rev'd on other grounds, 569 U.S. 66 (2013). Unlike a Rule 23 action, in which certification produces a class with an independent legal status, in an FLSA collective action "the sole consequence of conditional certification is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court." Genesis Healthcare, 569 U.S. at 74 (citations omitted); see also Zavala, 691 F.3d at 536 (explaining that "conditional certification" of an FLSA collective action is "not really certification" but instead an exercise of the court's discretionary authority "to facilitate the sending of notice to potential class members."). Whether to grant conditional certification to an FLSA collective action is left to the district court's discretion. Zavala, 691 F.3d at 536 (citing Hoffman-LaRoche v. Sperling, 493 U.S. 165 1989). At the second step of the process, known as final certification, a court must make "a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." Symczyk, 656 F.3d at 193.

The motion before the Court concerns the first step of the Section 216(b) process, as developed by FLSA jurisprudence. Thus, the Court will proceed to set forth the standard applicable to conditional certification of an FLSA collective action.

To obtain conditional certification, the plaintiff bears the burden of making a "modest factual showing" that the plaintiff and the individuals in the proposed group of potential opt-ins are similarly situated. Id. "Being similarly situated . . . means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." Zavala, 691 F.3d at 538. In adopting the "modest factual showing" standard, the Third Circuit held that "a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." Symczyk, 656 F.3d at 193 (quoting Smith v. Sovereign Bancorp., Inc., No. 03-2420, 2003 WL 22701017, at *3 (E.D.Pa. Nov. 13, 2003)); see also Zavala, 691 F.3d at 536 & n. 4 (noting the standard applicable to conditional certification of an FLSA collective action). Concerning the showing required of a plaintiff to obtain conditional certification, the Third Circuit has approvingly cited the Second Circuit's decision in Myers: "The Second Circuit has described this initial step as 'determin[ing] whether 'similarly situated' plaintiffs do in fact exist,' while at the second stage, the District Court determines 'whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.'" Zavala, 691 F.3d at 536 n.4 (quoting Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010)).[1]

---

[1] Although the standard at the conditional certification stage has been described as "fairly lenient," the Court of Appeals has also noted that a named plaintiff's "substantial allegations" that he and other employees have been similarly harmed by the defendant employer will not suffice. Symczyk, 656 F.3d at 192.

### B.  Plaintiff's Demonstration of the "Similarly Situated" Standard

In his motion for conditional certification, Plaintiff maintains that he and the putative class are similarly situated for a number of reasons. Plaintiff states that he and the Flik food service employees comprising the putative class:

> must follow Compass/FLIK's common policies, receive similar training, have similar duties (focus on food preparation and service, related requirements and guidelines) that are performed the same way, work similar schedules and similar hours based on similar staffing models, are subject to day-to-day changes in their scheduled or routines that require the performance of additional unscheduled work (such as late deliveries, menu changes and customer requests), are subject to the same staffing, workload and budgetary constraints, experienced the same reduction in hours around September 2014, use similar timekeeping systems and are paid through Compass' payroll system.

(Clarke Decl., dated May 1, 2018, ¶ 6.) Apart from noting the similarities in job descriptions and duties among the food service employees, Clarke posits two main grounds for his contention that there is a factual nexus linking his and the putative class's claims of unpaid work time: (1) Defendants' wage and hour policies, applicable to employees throughout cost centers, which Plaintiff claims enable off-the-clock work and (2) the practice of assigning employees an overwhelming workload they are unable to complete within scheduled hours coupled with denying the employees' attempts to claim any work time outside of their scheduled shift hours. Plaintiff argues that, on either basis—of common policy or of common practice—he has made a demonstration that he and the potential opt-in employees have been subjected to similar FLSA violations by Defendants and that his demonstration at this stage of the proceedings is sufficient to warrant notice of this suit to be sent to the nationwide group of Flik food service employees. Each basis offered by Plaintiff in support of the "similarly situated" standard will be examined below.

1. <u>Policy-Based Similarities</u>

Plaintiff states that Flik and its parent company Compass maintain common wage and hour policies, which he contends are applied across all cost centers to deprive employees of compensation for work they have performed in excess of the employees' regularly scheduled work hours. Clarke argues that Defendants' company-wide policies tolerate or even condone the performance of unpaid, off-the-clock work by employees. To support this claim, Plaintiff proffers the following Flik/Compass corporate wage and hour policies: the General Wage & Hour Policy ("Wage & Hour Policy"), the Company Approved Time Clock Use Policy ("Time Clock Policy"), and the Meal Period and Rest Breaks for Non-California Associates ("Meal Break Policy") (collectively, the "Policies") (Pl. Mot. Ex. L, M and N).

According to Plaintiff, the Policies inflict a common harm on himself and the putative class in three ways. One, the Policies require employees to record all hours worked using the company-approved timeclocks, an obligation which Plaintiff argues unlawfully shifts the statutory burden of keeping track of work hours from employer to employee and, moreover, prevents employees from obtaining compensation for all time worked. Two, the Policies require employees to obtain pre-approval from a manager for working outside of a scheduled shift or using the timeclock to record unscheduled time. Three, according to Plaintiff, the Policies deem any off-the-clock work to be "volunteered" by the employees and preclude compensation for it unless the employees report such work to a manager "immediately." (Pl. Mem. at 7-8.)

None of the policy-based grounds, individually or as a whole, provide any support for Plaintiff's contention that he and other employees across Flik cost centers are similarly situated, even under the modest showing required of Plaintiff at the conditional certification stage. Plaintiff simply does not give any indication that the Policies subject him, or any other food

service employees, to FLSA violations. Thus, his argument that the Policies form the basis of a factual nexus with regard to alleged FLSA violations that he and other food service employees may have sustained is unavailing. The Court will address each of the allegedly offending aspects of the Policies, and explain why they are unavailing, in turn.

First, Plaintiff fails to point to any authority which indicates that a timekeeping policy requiring employees to log their own work hours, in this case by using a timeclock, violates the FLSA. The FLSA and its implementing regulations require an employer to keep records of employee hours worked. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. However, neither the statute nor any regulation promulgated thereunder prohibits employers from adopting a timekeeping procedure which places some reasonable responsibility on employees to record the hours they work. See 29 C.F.R. § 516.1 ("No particular order or form of records is prescribed by the regulations in this part."). Indeed, various courts have noted that "the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions" and have found that an employer is allowed to put in place reasonable time reporting procedures to help it keep track of its employees' work hours. White v. Baptist Mem. Health Care Corp., 699 F.3d 869, 876 (6th Cir. 2012) (quoting Wood v. Mid-America Mgmt. Corp., 192 F. App'x 378, 381 (6th Cir. 2006); see also Craig v. Bridges Bros. Trucking LLC, 823 F.3d 382, 389 (6th Cir. 2016) (holding same); Santos Cordova v. Municipality of San Juan, No. 16-1348, 2017 WL 6542255, at *10 (D.P.R. Dec. 21, 2017) (holding that, under the FLSA, an employer is allowed to establish a reasonable timekeeping process which tasks employees with reporting their hours worked and that such a system permits the employer to "exercise the requisite diligence for purposes of establishing knowledge [of hours worked] or lack thereof."). Quoting a Department of Labor communication concerning recordkeeping under the FLSA, a district court in the Southern

District of New York presented with an "off-the-clock" FLSA claim noted that "[t]here is no legal requirement that employers maintain time clocks, *see* 29 C.F.R. § 785.48, that hours worked be contemporaneously recorded, or that employees be permitted to enter their own adjustments to a time record without verification by management." Zivali v. AT&T Mobility, LLC, 784 F. Supp. 2d 456, 461 (S.D.N.Y. 2011). Indeed, as the Zivali court further noted, guidance provided by the Department of Labor indicates that "[e]mployers may use any timekeeping method they choose." Id. at 461 n.1.[2]

Second, as to the Policies' requirement that employees obtain a manager's pre-approval for working overtime and/or any hours varying from their scheduled shifts, Plaintiff similarly presents no grounds for an FLSA violation. He fails to articulate how this requirement subjects employees to a common policy of denying them compensation for hours worked. Plaintiff tries to buttress his argument by pointing out that the Policies state that an employee's failure to secure such advance approval may result in "progressive counseling" of the employee, "up to and including termination." (Pl. Mot. Ex. L at 2.) However, "[r]equiring pre-approval for overtime, and disciplining employees for working overtime that has not been authorized, is not unlawful." Zivali, 784 F. Supp. 2d at 461-62 n.3 (citing Chao v. Gotham Registry, Inc., 514 F.3d 280, 291 (2d Cir. 2008)). Moreover, as Defendants note, the Policies also make clear that a non-compliant employee will nevertheless be paid for all hours worked. (See Ex. L at 2.)

---

[2] Apart from its lack of decisional or statutory support, Plaintiff's argument simply does not articulate how Defendants' timekeeping policy imposes an unreasonable burden on employees. Plaintiff has not demonstrated that, in requiring employees to use the timeclock, the Policies constitute evidence of a widespread policy of underpaying employees for work performed outside of scheduled hours.

Third, Plaintiff posits that Flik food service employees are similarly deprived of compensation for time worked because the Policies require an employee to "immediately claim extra work time" or else have that off-the-clock work deemed "volunteered." (Pl. Mem. at 7.) This policy, Plaintiff argues, routinely precludes employees across cost centers from getting paid for pre- or post-shift work time or for time worked during a meal break. The problem with this argument, however, is that the actual language in the policy sections cited by Plaintiff simply does not support his contentions that (a) the Policies discourage or impede employees from reporting overtime and (b) the Policies endorse the practice of not paying employees if overtime is not reported to a manager immediately. Rather, the language cited simply indicates that a failure to follow proper procedures relating to meal breaks could result in employee counseling. Moreover, the Policies provide that, regardless of whether time worked is reported according to established procedures, an employee must be paid for the time he or she has worked.

Plaintiff's "volunteered" time argument relies on a section of the Meal Break Policy which requires an employee who has been required to work during a scheduled meal break to report that to a manager "immediately," so the manger can reschedule the meal break and ensure the employee is paid for his or her time. (Pl. Ex. N at 3.) The Meal Break Policy goes on to state that if not immediately reported, the time spent working during a meal break will be considered "voluntary," which means the employee chose not to take a meal break. (Id. at 2-3.) The Policy makes it clear that in either situation, the employee must be paid for the time worked. (Id. at 2.) While an employee who works during a meal break without manager approval may be subject to training or progressive counseling, he or she will not, under the Policies, be deemed to have forfeited pay, as Plaintiff has argued.

The other Policy instances proffered by Plaintiff as evidence of an "illegal system" of off-the-clock work are, for the same reasons, unavailing to provide the requisite commonality under FLSA Section 216(b). (See Pl. Mem. at 7-8.) In these other instances, Defendants Policies similarly use the term "voluntarily" to refer to time worked by an employee "at the end of a shift to finish an assigned task," as set forth in the Wage and Hour Policy (Ex. L at 4), and time spent by an employee working during a scheduled rest break, as set forth in the Meal Break Policy (Ex. N at 4). Plaintiff points to no Policy language that denies an employee compensation for time worked, even when, in contravention of the company rules, the additional time has been unscheduled and unapproved by a manager.

In short, Plaintiff's effort to demonstrate that he and the putative class are similarly situated by virtue of unlawful company policies fails. For the reasons discussed, the Policies provide no factual nexus between an alleged FLSA violation sustained by Plaintiff and a potential violation suffered by others in some similar manner.

          2.   <u>Practice-Based Similarities</u>

Plaintiff also asserts that the Flik food service employees are similarly situated to him as a result of workplace practices to which they have also been subjected, resulting in their alleged failure to receive compensation for all hours worked. The nexus between Plaintiff and the putative class is, according to Plaintiff, based on the following: (a) food service employees have performed off-the-clock work which Flik managers either tolerated or encouraged by cutting scheduled hours, pressuring employees to handle an overwhelming workload and then refusing to allow the employees to record their extra work time; and (b) food service employees have been required to travel to locations other than their respective assigned cost centers and have not been compensated for this work-related travel. While the question on this motion for conditional

certification under FLSA Section 216(b) is not whether Plaintiff can ultimately prove that these alleged FLSA violations occurred to himself and to other employees, Plaintiff must proffer some evidence indicating that others were subjected to the practices complained of by Plaintiff, that is, that such similarly situated employees in fact exist.

Initially, with his moving papers, the only evidence submitted by Plaintiff to make the required demonstration consisted of his declaration. Because the Court later accepted a supplemental submission, which will be discussed below, it will refer to Clarke's initial declaration as the "May 1 Declaration." In the May 1 Declaration, Plaintiff sets forth his personal knowledge of Flik's companywide staffing and budgeting constraints. He states that in or about September 2014, as part of Flik's "wide-spread effort to reduce labor costs," many employees experienced a reduction in scheduled work hours but not in responsibilities. (Clarke Decl., dated May 1, 2018, ¶ 3.) He maintains that these cuts form the basis of a common practice of expecting employees to perform more work in fewer hours, which has driven employees to work in excess of their scheduled hours so that they will not be terminated. As his basis for this knowledge, he states that he has personally witnessed dozens of food service employees come in early or stay late performing such work-related tasks as setting up their stations, pulling food items from storage, preheating ovens, cleaning their work stations and stocking various items to get ready for the next shift. Moreover, Plaintiff states that employees in the putative class must handle unexpected additional tasks, such as corporate catering orders and/or late deliveries, that unpredictably increase their workload on a day-to-day basis and require food service employees to work in excess of their scheduled shift times. Plaintiff further asserts that food service employees are not compensated for work performed pre-shift, post-shift, and during meal breaks. He states, based on his knowledge of the timeclock system and on his personal observations, that

employees are not permitted by managers to clock in or out in a manner that would accurately and contemporaneously record the employees' work time. According to Plaintiff, "managers have harassed, reprimanded and threatened employees" who have tried to clock in early or clock out late to record their pre- or post-shift work, respectively. (Clarke Decl., dated May 1, 2018, ¶¶ 11, 17.)

The assertions made by Plaintiff in his May 1 Declaration are insufficient to make even a modest factual showing that the putative class of nationwide Flik food service employees are similarly situated to Plaintiff. As to the practices Plaintiff says he personally observed, while he claims he saw "dozens" of other employees perform off-the-clock work, Plaintiff fails to provide any details about his observations – when and how often the pre-shift, post-shift and meal break work occurred, which employees he saw engaged in such "extra" work, and how Plaintiff was in a position to make such observations of employees' work patterns. In other words, Clarke does not explain how, even at his own cost center, he kept track of employees who were starting to work earlier than scheduled, continuing to work later than the end of their respective shifts, and/or working during their staggered meal break times. Plaintiff's assertions that others engaged in off-the-clock work presumes Plaintiff's personal knowledge of the varying work schedules of these dozens of other employees as well as his knowledge that the employees had not clocked in, had already clocked out or had otherwise failed to receive credit for the additional work time (by, for example, a manager's manual adjustment to the timeclock record). However, Plaintiff provides no basis for having such knowledge. He also fails to provide any evidence to support his assertion that managers at either of the cost centers where Plaintiff worked, that is, Bayer Whippany and Bayer Morristown, refused to allow employees to record or claim their

unscheduled work time. As to the aspect of Plaintiff's FLSA claim based on an alleged failure to pay for time spent and for expenses incurred in traveling to other cost centers, Plaintiff provides no evidence at all that any other employee might share such a grievance.

Additionally, the Court notes that the May 1 Declaration provides no factual basis whatsoever for the purported occurrence of off-the-clock work at any Flik cost center other than the two where Plaintiff himself worked during the time relevant to this lawsuit. Compounding the assumptions underlying Plaintiff's purported knowledge that Flik food service employees work off-the-clock, Plaintiff asks the Court, without basis, to extrapolate that the observations he made at the two cost centers to which he was assigned during the relevant time period demonstrate similar practices elsewhere. Plaintiff's motion provides no firsthand evidence that FLSA violations of the kind Plaintiff claims he sustained were allegedly experienced by employees in any of the hundreds of Flik cost centers nationwide. Nor does he put forth evidence indicating that Flik engaged in systematic practices which make it likely, or even possible, that food service employees in cost centers across the country worked uncompensated, off-the-clock time, or, as concerns Plaintiff's other alleged FLSA violation, traveled to other cost centers and received no pay for the travel. Whether food service employees at the other cost centers worked outside of scheduled hours with the knowledge of Flik management and whether Defendants' timekeeping procedures failed to capture that time is a highly individualized question. The facts supplied by Defendants as to the variation among cost centers with regard to staffing and scheduling—determined locally by managers according to the corporate client's needs— underscore the speculative nature of Plaintiff's claims that the nationwide putative class members are similarly situated to him.

The information Plaintiff offers in the May 1 Declaration amounts to no more than his assumptions with regard to the experience of other food service employees. Indeed, Plaintiff's initial submission in support of his motion is wholly conclusory on the key issue for conditional certification—whether similarly situated employees in fact exist. Plaintiff's unsubstantiated beliefs that others also worked off-the-clock and/or traveled for work without compensation cannot, without more, establish the factual nexus necessary to meet the conditional certification standard. See, e.g., Shala v. Dimora Ristorante, Inc., Civ. No. 2:16-3064, 2016 WL 7386954, at *3 (D.N.J. Dec. 21, 2016) (rejecting the plaintiff's attempt at obtaining conditional certification as insufficient and merely speculative where it was based solely on assertions made in his declaration); Federman v. Bank of Am., N.A., No.14-441, 2016 WL 3090631, at *5 (D.N.J. May 31, 2016) (denying motion for conditional certification where plaintiffs offered only their unsupported assertions that other employees were deprived of pay for overtime hours and noting that "[c]ourts in this Circuit . . . have routinely found that such speculation is not proper.").

However, Plaintiff indicated in a footnote to his moving brief that he possesses hundreds of "time- and date-stamped photographs showing at least seven other Class members performing pre-shift work for Defendants" as well as audio and video files of conversations with these employees demonstrating that they performed unpaid work. (Pl. Mem. at 3 n.2.) In an effort to give Plaintiff an opportunity to present this evidence in support of his motion for conditional certification, the Court issued an order directing the parties to file supplementary submissions. Plaintiff submitted a second declaration, dated July 10, 2018 (the "July 10 Declaration"), to which he attaches a total of 51 photographs of five employees, identified by name, purportedly engaged in work at the Bayer Whippany location before their scheduled start time. The July 10 Declaration also attaches a document Plaintiff identifies as a list of employee start times, which

he states is posted at the workplace. No video or audio files were submitted. Also, still missing, even after the supplemental submission, is any evidence indicating that other employees were required to travel for work and were not compensated for their time or reimbursed for expenses incurred in connection with that travel.

The photographs indeed show individuals dressed in food service uniforms and located in a commercial food kitchen setting. They are date-stamped on several different days in August 2016, corresponding to the time period in which Clarke worked at Bayer Whippany. The photographs are time-stamped at various times between 5:40 a.m. and 6:00 a.m. According to the list of start times, which is not dated, the employees pictured in the photographs were scheduled to clock in for their shifts at 6:00 a.m. or 6:15 a.m. Plaintiff asserts that these photographs show that on various occasions, other employees began to work before their scheduled shift time. As a basis for claiming that the purported pre-shift work was unpaid, Plaintiff states the following in his July 10 Declaration:

> I also know my pictures show off the clock work because I talked to the Associates shown in my pictures around the time I took my pictures to confirm they had not punched in early that morning and were working off the clock without pay.

(Clarke Decl., dated July 10, 2018, ¶ 6.)

While it is not clear that all of five of the food service employees depicted in the photographs submitted by Plaintiff are in fact engaged in work tasks, Plaintiff has come forward with some indication that other employees at Bayer Whippany would arrive at work early, that is, before their shift time. Moreover, while he has not produced the audio and video files he had claimed contained recorded conversations between himself and other employees about working off-the-clock, Plaintiff has given some basis, albeit generalized, for his knowledge that the individuals pictured were working off-the-clock. The Court acknowledges Defendants' argument

that this evidence is insufficient, because, among other things, the photographs do not clearly show that the employees were in fact working and because the proffered basis for claiming this work was off-the-clock—conversations in which Plaintiff claims he was told by the pictured employees that they had not clocked on the date and time in question—amount to inadmissible hearsay evidence. The evidence is indeed minimal. The Court issues no decision and makes no comment as to the sufficiency of such evidence to obtain final certification and/or to prove the merits of an FLSA claim. However, Plaintiff's burden on a motion for conditional certification is not to produce evidence that would prove that either he or other employees in fact sustained the claimed FLSA violations.

The Court finds that Plaintiff has made a modest factual showing of a nexus between himself and the food service employees at Flik's Bayer Whippany cost center and therefore has satisfied the standard for conditional certification of this limited class under FLSA Section 216(b). The Court thus approves that notice of this suit may be distributed to a class consisting of all people who have worked in the Flik cost center for Bayer located in Whippany, New Jersey under the following seven job titles during any workweek in the past three years: Cook, Grill Cook, Prep Cook, Sr. Cook, Food Svc Utility (a/k/a Utility Associate), Food Svc Worker and Food Svc Worker/Cashier (a/k/a Cashier/Food Service Worker).

### C. Form of Notice and Method of Distribution

Plaintiff submitted a proposed notice to the class with his moving papers, and Defendants raised a number of objections to language used therein. Plaintiff, in reply, acquiesced to some of Defendants' proposed changes and incorporated them into a revised form of notice (hereinafter "Revised Notice") (attached to Plaintiff's reply brief at ECF 37-1). Four points of disagreement regarding the Revised Notice remain, and the Court will proceed to address each in turn.

One, Defendants wish to add language advising prospective plaintiffs that, in the event Defendants prevail in this lawsuit, the opt-in plaintiffs could be responsible for Defendants' litigation costs. Specifically (under the heading "What is the Effect of Joining this Case?"), they propose advising opt-in plaintiffs that that there is a "possibility that you will be responsible for Defendants' costs if you are unsuccessful." (See ECF 36-9.) Plaintiff objects, arguing that such a warning could have a chilling effect on class member participation in the litigation. The Court finds that the statement proposed by Defendants is appropriate, as it makes clear that, by opting in, an employee effectively becomes a party in the case and thus there is a possibility that he or she will be responsible for Defendants' costs in the event the plaintiffs are not successful. See Slamna v. API Rest. Corp., No. 12-757, 2013 WL 3340290, at *4 (S.D.N.Y. July 2, 2013) (approving the inclusion of a statement regarding opt-in plaintiffs' responsibility for the defendant's costs of litigation, reasoning that the "operative language makes clear that there is only [a] possibility, rather than a probability, that putative plaintiffs will be responsible for costs.").

Two, Defendants would like the notice to include contact information for Defendants' attorneys. Plaintiff argues that this information would cause substantial confusion to prospective class members, particularly concerning the adverse relationship of Defendants' counsel to plaintiffs concerning their FLSA claims. He also argues that providing information about Defendants' counsel could create the mistaken impression that opt-in plaintiffs may contact those attorneys for legal advice or information about the lawsuit. The Court agrees with Plaintiff and concludes that contact information for Defendants' attorneys should not be included in the notice.

Three, the parties disagree as to the method of disseminating notice. In addition to sending notice via first class mail, Plaintiff also wishes to post the notice at cost centers and seeks permission to send a reminder notice via postcard and/or email. The Court will permit notice to be posted at the relevant Flik cost center, that is, at the Bayer Whippany location. "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) Defendants shall post the notice of this lawsuit in the same area in which they post required notices relating to the FLSA and/or other employee rights. The Court denies Plaintiff's request to send a reminder notice, as he gives no indication that an initial notice mailed to a prospective plaintiff would be insufficient to advise that individual of this lawsuit and of his or her opportunity to opt in to the action.

Four, Plaintiff has requested that Defendants be ordered to produce contact information for all individuals in the putative class. Defendants object to this request insofar as it seeks the individuals' respective social security numbers. Indeed, Plaintiff has given no justification for requiring social security numbers. Although Plaintiff maintains that social security numbers are necessary to permit an effective search of prospective class members in the event of a delivery failure, Plaintiff has not demonstrated any such need at the current time. There is no indication that effective notice cannot be accomplished based on information which includes a prospective class member's full name, last-known mailing address, and last-known email address.

Finally, the Court itself notes an additional revision to the proposed notice that must be made in light of the Court's ruling on this motion for conditional certification. While Plaintiff's individual FLSA claim is based on both allegations of off-the-clock work and allegations of a

failure to pay for work-related travel, the Court has found that Plaintiff has not demonstrated that there are similarly situated employees with regard to the work-related travel aspect of the claim. Thus, in the notice's description of the claim to which others can opt-in (under the heading "What is the Lawsuit About?"), the following language must be stricken: "knowingly failing to pay overtime wages or expense reimbursements relating to the Class members' work-related travel or off-site work."

Accordingly, subject to revision of the class definition consistent with the discussion in Section II.B of this Opinion and subject to the modifications discussed in Section II.C above, the Court approves the Revised Notice submitted by Plaintiff. As the accompanying Order will direct, Plaintiff must serve a further revised version of the notice on Defendants, and Defendants will be given an opportunity to express any objections before the notice may be distributed.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional certification will be granted in part and denied in part. An appropriate Order will be filed together with this Opinion.


        s/ Stanley R. Chesler
        STANLEY R. CHESLER
        United States District Judge


Dated: August 16, 2018