IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES CLARKE, for himself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>FLIK INTERNATIONAL CORP. and COMPASS GROUP NORTH AMERICA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 17-cv-1915-SRC-CLW<br>)<br>)<br>)<br>)<br>) |

**JOINT MOTION AND INCORPORATED MEMORANDUM OF
LAW FOR APPROVAL OF THE PARTIES' FLSA SETTLEMENT
INCLUDING ATTORNEYS' FEES AND COSTS**

James Clarke ("Named Plaintiff") and six Opt-In Plaintiffs (collectively, "Plaintiffs"), FLIK International Corp. and Compass Group USA, Inc. ("Defendants") (collectively, the "Parties"), through their undersigned counsel, jointly move the Court for an Order approving the settlement reached in this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. The Parties have negotiated a settlement to resolve this *bona fide* FLSA dispute after several years of motion practice and discovery, the exchange of substantial discovery to inform the Parties' damage calculations, extensive arm's-length negotiations conducted by counsel well-versed in wage and hour litigation and a settlement conference overseen by this Court.

The Parties submit that the terms of their proposed Stipulation and Agreement of Settlement ("Settlement Agreement") are fair, reasonable and adequate, particularly in light of the existence of disputed issues of fact and law with respect to liability and damages, uncertainty as to whether each Plaintiff would obtain a judgment in his or her favor, along with the risks of trial and possible appeals. *See generally* Settlement Agreement (Exhibit 1).

1

I. **BACKGROUND**

   A. **Procedural History**

On March 23, 2017, Named Plaintiff filed a putative collective action Complaint against Defendants, alleging violations of the FLSA. *See* Complaint [Dkt. No. 1]. Named Plaintiff alleged that he and other hourly-paid Culinary Associates had been subjected to common policies and procedures that deprived them of wages for more than *de minimis* meal break, off the clock pre-shift work, and off-the-clock post-shift work, of which Defendants had actual or constructive knowledge. *Id*. at ¶ 1-2. On March 28, 2017, Named Plaintiff filed an Amended Complaint naming different corporate entities. *See* Amended Complaint [Dkt. No. 3]. On June 26, 2017, Defendants filed an Answer. *See* Answer [Dkt. No. 20].

After the pleadings were closed, the Parties undertook conditional certification discovery including exchanging document requests and interrogatories. Class Counsel Dec. at ¶ 7 (Exhibit 2). On May 2, 2018, Named Plaintiff filed a motion for FLSA conditional certification seeking a nationwide class of FLIK Culinary Associates. *See* Motion [Dkt. No. 35]. On August 16, 2018, this Court granted Named Plaintiff's Motion in part limiting the conditionally-certified collective to FLIK Culinary Associates in one of the locations where the Named Plaintiff worked, after which Plaintiff's Counsel disseminated the Court-approved class notice to the collective. *See* Order [Dkt. 42]. Thereafter, six people (Martha Abeel, Virgil Hill, Paola Patino, Catalina Paula, Dayhana Santana and Luis Santana) returned completed consent forms to join the case *See* Consent Forms [Dkt. Nos. 47, 49, 50, 53].

On October 2, 2019, the Parties participated in a Settlement Conference conducted by Hon. Stanley R. Chesler. Class Counsel Dec. at ¶ 8 (Exhibit 2). This negotiation was informed by Defendants' production of Plaintiffs' time and pay records and the Parties' thorough investigation of their claims, including arguments for and against Defendants' liability and Plaintiffs'

2

entitlement to damages. *Id.* During this conference, counsel for Plaintiffs and Defendants, with the Court's assistance, reached an agreement in principle to settle all claims pending against Defendants in this action on behalf of the Named Plaintiff and the six Opt-In Plaintiffs. *Id.*

### B. Nature of Plaintiffs' Claims

Plaintiffs allege that they performed pre-shift work including: setting up their stations, pulling food items from walk-ins, pulling food items from storage, collecting cutting boards, collecting garbage cans and trash bags, collecting salad bar crooks, collect hotel pans, place ice in hotel pans, preheating ovens, preparing food, completing breakfast prep and addressing kitchen hazards. Amended Complaint at ¶¶ 1, 33 [Dkt. No. 3]. Plaintiffs allege that they performed work during their 30-minute unpaid meal break, including but not limited to food preparation, kitchen work, cleaning work, and stocking the storeroom, café, and café cook station. *Id*. at ¶ 37, 40. Lastly, Plaintiffs allege that they worked as much as 60 minutes past their scheduled shift time, performing unpaid work such as preparing food for the next day, cleaning the kitchen, cleaning and stocking the café, cleaning and stocking the café cook station. *Id*. at ¶ 46. Accordingly, Plaintiffs allege that Defendants violated the FLSA by depriving them of overtime owed for the work they performed during meal breaks and for time spent performing pre-shift and post-shift work. Defendants vehemently deny that Plaintiffs worked off-the-clock as alleged.

### C. Legal Background

The FLSA requires employers to pay employees for all hours worked, including a "time-and-one-half" overtime premium for all hours worked over 40 in a workweek. *See* 29 U.S.C. §§ 206-207. The FLSA does not specifically define what is meant by the term "work", *id*., but the Department of Labor has promulgated regulations containing "Principles for Determination of Hours Worked" to inform this issue. *See* 29 C.F.R. §§ 785.11-785.13. These principles state that

3

any work an employer "suffers or permits" to be performed must be counted as hours worked when the employer "knows or has reason to believe" the work is being performed:

> **§ 785.11 General.**
> Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time (citations omitted).
>
> **§ 785.13 Duty of management.**
> In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.
>
> **§ 785.19 Meal.**
> Bona fide meal periods. Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

*See* 29 C.F.R. §§ 785.11-785.19. Plaintiffs allege that Defendants violated the FLSA and its implementing Regulations by failing to pay them for all of the work they performed. Defendants vehemently deny having violated the FLSA with respect to Plaintiffs, and assert they correctly pay and track the hours of all employees, including Plaintiffs, for all hours they work. The Court has not made any substantive ruling on whether Defendants have violated the FLSA.

4

## II. THE PARTIES' PROPOSED SETTLEMENT

The Parties negotiated a gross settlement amount payment of $55,00.00 to resolve in full and complete settlement of any and all wage and hour claims that were asserted, or could have been asserted, in this lawsuit or otherwise, by Plaintiffs against Defendants, including, without limitation, any claim for attorneys' fees or costs, liquidated damages, and claims arising from disputes related to wages. *See generally* Settlement Agreement (Exhibit 1). As outlined in Section 2 of the Agreement, the Parties propose to distribute this sum as follows: $32,435.00 to Plaintiffs as damages and lost wages; $19,000.00 as attorney's fees to Plaintiffs' counsel; and $3,565.00 as a reimbursement for out-of-pocket costs to Plaintiffs' counsel. *Id.* The $32,435.00 allocated to the Named Plaintiff and six Opt-In Plaintiffs represents a fair and reasonable result because of the uncertainty of proving whether Defendants had violated the FLSA, proving the time actually worked for allegedly interrupted meal breaks, post-shift work, and pre-shift work, and the considerations associated with the risks, costs and delays of continuing the litigation, including questions regarding the credibility of Named Plaintiff as stated by the Court during the evidentiary hearing on Defendants' Motion for Sanctions.

By cashing their damages and lost wages payments, Plaintiffs will provide Defendants with a release from:

> all actions, causes of action, claims, and demands whatsoever, whether known or unknown, whether asserted or unasserted, in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, related to Plaintiffs' wages or hours during his/her employment with Defendants or any agreement concerning wages or hours during such employment or the termination of such employment, which Plaintiffs or Plaintiffs' heirs, executors, administrators, successors, and assigns ever had, now have, could, may or would have from the beginning of the world to the date of the respective Plaintiffs' execution of this Settlement Agreement, including, but not limited to, any and all wage and hour claims, any claim for unpaid wages or overtime pursuant to the FLSA, NJWHL, or New Jersey Wage Payment Act ("NJWPA"), any claim for failure

> to pay for off-the-clock work, any claim for failure to reimburse for travel expenses, any claim for retaliation pursuant to the FLSA, NWHL, or NJWPA, any claim that was asserted in the Wage-Hour Lawsuit, and any and all claims for monetary recovery from a waived claim, whether brought in a lawsuit or by an administrative agency, including, but not limited to, back pay, front pay, loans, liquidated, compensatory, and punitive damages, and attorneys' fees, experts' fees, disbursements, and costs.

*See* Settlement Agreement ¶ 4 (Exhibit 1). In order for the Settlement Agreement, and the release contained therein, to become effective, all Parties must execute the Settlement Agreement. *Id.*

## III. STANDARD FOR FLSA SETTLEMENT APPROVAL

Because the Third Circuit has not yet weighed in on the issue, courts in this Circuit adhere to the FLSA approval process set forth by the Eleventh Circuit in *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). Applying this process, the Court must determine "that the compromise reached is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Cruz v. JMC Holdings, Ltd.,* 2019 WL 4745284, at *3 (D.N.J. Sept. 30, 2019). "A proposed settlement resolves a 'bona fide dispute' when it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute,' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Davis v. Essex County*, 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015). The court must be reassured that the settlement resolves a bona fide dispute over "factual issues" rather than "legal issues such as the statute's coverage or applicability." *Brumley v. Camin Cargo Control, Inc*., 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012).

"In determining whether a compromise is fair and reasonable, courts in this Circuit consider both (1) whether the compromise is fair and reasonable to the employee, and (2) whether the compromise otherwise frustrates the implementation of the FLSA." *Gabrielyan v. S.O. Rose Apartments LLC*, 2015 WL 5853924, at *2 (D.N.J. Oct. 5, 2015).

## IV. THE COURT SHOULD APPROVE THE PARTIES' PROPOSED SETTLEMENT

### A. The Parties' Settlement Represents The Resolution of A *Bona Fide* Dispute

Here, it is apparent that the Parties' dispute is *bona fide* based on the hotly-contested litigation that has spanned more than two years. Plaintiffs claim the FLSA requires Defendants to pay them for performing pre-shift and post-shift work as well as more than *de minimis* meal break work. Defendants deny that any unpaid work occurred and insist Plaintiffs' hours were properly tracked and Plaintiffs were properly paid for all the work they performed. The Parties have engaged in contentious motion practice throughout this litigation, including Plaintiff's 216(b) Motion for Conditional Certification and Defendants' Opposition, Defendants' Motion for Sanctions and Plaintiff's Opposition (which included an evidentiary hearing on the Motion), and Defendants' Motion for Protective Order and Plaintiff's Opposition. *See* [Dkt. Nos. 35; 37; 45; 46; 62; 64]. The Parties have also spent significant time and effort on discovery, including exchanging documents and extensive damages calculations. Class Counsel Dec. at ¶ 9 (Exhibit 2). Further, Defendants have previously rejected Plaintiff's settlement demands, evidencing the highly-disputed nature of this *bona fide* dispute. *Id*. Had the Parties not been able to negotiate a settlement, all of the Parties' disagreements would have become *bona fide* factual and legal disputes for the Court to resolve in addition to any future disputes concerning motions for final FLSA certification, motions for decertification, pre-trial evidentiary disputes, and jury instructions.

Further, considering the representations and recitals in the proposed Settlement Agreement, the Parties' proposed settlement represents a reasonable compromise of disputed claims. Named Plaintiff alleged that he and other Culinary Associates were owed wages for time spent performing pre-shift, post-shift, and meal break work. *See* Amended Complaint at ¶¶ 1-2 [Dkt. No. 3]. As set forth in the Settlement Agreement, Defendants deny all liability, including that "they violated the law in any manner alleged in or related to the Wage-Hour Lawsuit." *See* Settlement Agreement at ¶ 11 (Exhibit

1). Accordingly, it is clear that the Parties' proposed settlement represents a reasonable compromise of a *bona fide* dispute.

### B.  The Settlement Is Fair and Reasonable

In determining the fairness of a proposed settlement, district courts within the Third Circuit have considered the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). *See Atis v. Freedom Mortg. Corp.,* 2018 WL 5801544, at *3 (D.N.J. Nov. 6, 2018). The nine *Girsh* Factors include: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157–58. This Court should approve the Parties' proposed settlement because, for the reasons discussed throughout this filing, all of the *Girsh* factors either weigh in favor of approval, or do not suggest the settlement is unfair.

#### 1.  The settlement as a whole is fair and reasonable

Here, the Parties respectfully submit that their proposed settlement is fair and reasonable in light of all the applicable factors. During the Parties' settlement negotiations, based on time and pay data Defendants produced, Plaintiffs calculated their maximum compensatory damages as ranging from $22,259 to $52,841. Class Counsel Dec. at ¶ 10 (Exhibit 2). Defendants have agreed to pay a Gross Settlement Amount of $55,000.00, including $32,435.00 in damages to Plaintiffs, a number slightly below the median of Plaintiffs' calculations. *Id.* at ¶ 11. The Settlement Agreement provides for this amount to be divided *pro rata* among the seven Named and Opt-In Plaintiffs based on the total number of weeks each Plaintiff worked for Defendants during the

8

applicable limitations period and each Plaintiff's highest hourly wage rate during the relevant period. *See* Settlement Agreement ¶ 2.

This settlement has the full support of Plaintiff, the Opt-In Plaintiffs and Defendants and was reached after the exchange of substantial discovery, two years of hotly-contested litigation, several settlement conferences with Magistrate Judge Waldor, and a settlement conference with Judge Chesler, at which the final gross settlement amount was agreed upon with the assistance and endorsement of Judge Chesler. Class Counsel Dec. at ¶ 12 (Exhibit 2). Plaintiffs have entered into this settlement agreement cognizant of the risks of proving liability and damages and maintaining this case on a collective basis through trial. Defendants have entered into this settlement agreement cognizant of the risks that they may be found liable for Plaintiffs' alleged violations, the possibility that this case may proceed to trial on a collective basis and that they may be held responsible for paying Plaintiffs' damages. Although Defendants are most certainly able to withstand a greater judgment, the Parties' settlement – which provides the Named and Opt-In Plaintiffs with approximately 50% of the maximum compensatory damages owed on their claims – is reasonable in light of the best possible recovery with consideration for all the attendant risks of litigation.[1]

### 2. The proposed attorneys' fees are fair and reasonable

The settlement provides for the payment of attorneys' fees and costs to Class Counsel. Judicial review of attorneys' fees is required "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.

---

[1] As in all wage and hour claims, particularly in the collective action context, the nature and amount of recoverable damages is uncertain. Even if a trier of fact ultimately found liability, a range of possible damages exist depending on factors including, but not limited to, the Parties' and their witnesses' credibility, the limitations in the available data tracking work performed, the applicable statute of limitations, and Defendants' knowledge, willfulness and good faith. In particular here, establishing damages would prove risky considering the nature of Plaintiffs' off-the-clock claims. Defendants produced adequate discovery to perform the necessary calculations to determine the potential range of recovery in this case.

*Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *9 (D.N.J. Aug. 6, 2014), *quoting Brumley*, 2012 WL 1019337 at *9.  Percentage-of-recovery is the prevailing method used by courts in the Third Circuit to assess attorneys' fees in wage and hour cases.  *Id.*  The Third Circuit has set forth seven factors for evaluating the appropriateness of an attorneys' fee award under the percentage of recovery method: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.  *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (n. 1) (3d Cir. 2000).

Here, the proposed settlement provides for $19,000.00 in attorneys' fees, representing 34% of the settlement value, plus $3,565.00 in litigation costs. "The Third Circuit has noted with approval percentage-of-recovery attorneys' fees awards which range from as little as 19% of the recovery to as much as 45% of the recovery." *Demmick v. Cellco P'ship*, 2015 WL 13646311, at *3 (D.N.J. May 1, 2015) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 819 (3d Cir. 1995); *In re Merck & Co., Inc. Vytorin ERISA Litig.,* 2010 WL 547613, at *9 (D.N.J. Feb. 9, 2010) (approving fee of 33% of settlement); *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, 2019 WL 4877563, at *6 (D.N.J. Oct. 3, 2019) ("[c]ourts in the Third Circuit, including this one, have viewed fee percentages of 33% as reasonable."); *Dominguez v. Galaxy Recycling Inc.,* 2017 WL 2495406, at *7 (D.N.J. June 9, 2017) (approving fee of 37%).

Here, Class counsel seeks just slightly more than one-third, and its requested fee award stays well within the amounts typically approved in this Circuit.  This number takes into account the lengthy duration of this litigation, the risk of continuing with litigation, the burden and cost of the extensive discovery required to date and, of course, the risk that Class Counsel would have recovered nothing

10

from a losing effort. Counsel for Plaintiffs have expended significant time and effort drafting the Complaint, preparing initial disclosures, drafting the Amended Complaint, drafting the parties' Rule 26 plan, participating in various scheduling conferences and drafting scheduling stipulations and orders, litigating Named Plaintiff's FLSA conditional certification motion, litigating class notice issues, supervising the notice mailing and opt-in efforts, engaging in discovery, conferring on and litigating class discovery issues, reviewing pages and documents produced by Defendants, reviewing confirmatory discovery and performing damage calculations to prepare for the Parties' settlement conference, engaging in the settlement conference, drafting the settlement agreement and seeking approval for the Parties' proposed settlement. Therefore, the requested fee award of $19,000.00 is fair and reasonable compensation.

Even after analyzing the above factors, the Third Circuit suggests that district courts "cross-check" the percentage fee award against the lodestar award method." *Bredbenner v. Liberty Travel, Inc.,* 2011 WL 1344745, at *19 (D.N.J. Apr. 8, 2011). "The crosscheck is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier." *In re AT & T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Even when used as a cross-check, courts should "explain how the application of a multiplier is justified by the facts of a particular case." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005), *quoting In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 340 (3d Cir. 1998).

As of the date of filing, Class Counsel have spent more than 306.1 hours on a wide array of litigation tasks in this matter. *See* Class Counsel Dec. at ¶¶ 15-16 (Exhibit 2). Billed at their typical and customary rates, this work provides a total lodestar of $188,015.00. *Id.* Class Counsel performed this work without compensation for the duration of this litigation and our entitlement to payment has been wholly contingent upon the result they achieved. *Id* at ¶ 17. The $19,000.00 fee requested in this settlement is approximately 10% of Class Counsel's $188,015.00 lodestar, which strongly

supports approval of the requested fee. *See In re Ins. Brokerage Antitrust Litig.,* 282 F.R.D. 92, 124 (D.N.J. 2012) (a fee representing payment of a negative lodestar multiplier is considered reasonable).

### 3. The proposed cost recovery is fair and reasonable

Finally, this Settlement Agreement seeks $3,565.00 in out-of-pocket costs Class Counsel paid for court fees, service of process, travel costs, photocopying, postage/express mail, class notice expenses and telephone charges – all of which are reflected on books and records prepared from expense vouchers, check records and other source materials. *See* Class Counsel Dec. at ¶ 18 (Exhibit 2). The expenses incurred in this case are expenses normally charged to clients, are not part of Plaintiff's Counsel's regular overhead and were reasonable and necessary to prosecute the case. *Id.*

It is well-established that "[c]ounsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *Sheinberg v. Sorensen*, 2016 WL 3381242, at *10 (D.N.J. June 14, 2016) (approving reimbursement of costs for "filing fees; costs for photocopying expenses and telephone and facsimile charges; costs for postage, messenger, and express mail service charges; witness fees and costs associated with expert witnesses and consultants; and costs associated with computer-assisted legal research").

As described in the attached declaration, Class counsel have incurred $3,565.00 in costs relating to this lawsuit between March 23, 2017 and the present, including court fees, service of process, travel costs, photocopying, postage/express mail, and telephone costs. *See* Class Counsel Dec. at ¶¶ 35-36. Class Counsel paid these expenses on a contingent basis, risking their recovery on the outcome of this litigation, and have not received any cost payment or reimbursement of any

sort throughout the duration of this case. The requested cost reimbursement would provide Class Counsel with a full recovery of their actual "out-of-pocket" expenses in this case.

### C. The Settlement Furthers the FLSA's Implementation In The Workplace

"The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours." *Lynn's Food Stores, Inc.*, 679 F.2d at 1352. Judicial approval of a settlement is necessary in order to ensure that the compromise "furthers implementation of the FLSA in the workplace." *Brumley*, 2012 WL 1019337, *4. Courts generally find that fair and reasonable FLSA settlements promote the FLSA's purpose so long as they avoid restrictive confidentiality clauses and impermissibly broad release provisions. *See, e.g., Mabry v. Hildebrandt,* 2015 WL 5025810, at *3 (E.D. Pa. 2015) (rejecting confidentiality clauses that promoted "silencing employees who have vindicated their rights under the FLSA.").

Here, the Parties did not include a confidentiality clause in the Settlement Agreement. Therefore, the "public-private character" of employee rights under the FLSA" is preserved, and the Settlement Agreement allows for the public, including current, former, or potential employees of Defendants, to assure that employee wages are fair by virtue of public knowledge of the settlement. *Brumley*, 2012 WL 1019337, at *1. Further, the Settlement release clause is not impermissibly broad, but rather, is properly tailored to achieve a fair compromise for both Parties. *See* Settlement Agreement at ¶ 4. The Settlement Agreement provides for a wage and hour release, requiring that Plaintiffs release the Released Parties (as defined in the Settlement Agreement):

> from all actions, causes of action, claims, and demands whatsoever, whether known or unknown, whether asserted or unasserted, in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, related to Plaintiffs' wages or hours during his/her employment with Defendants or any agreement concerning wages or hours during such employment or the termination of such employment, which Plaintiffs or Plaintiffs' heirs, executors, administrators, successors, and assigns ever had, now have, could, may or would have from the beginning of the world to the date of the respective Plaintiffs'

13

>execution of this Settlement Agreement, including, but not limited to, any and all wage and hour claims, any claim for unpaid wages or overtime pursuant to the FLSA, NJWHL, or New Jersey Wage Payment Act ("NJWPA"), any claim for failure to pay for off-the-clock work, any claim for failure to reimburse for travel expenses, any claim for retaliation pursuant to the FLSA, NWHL, or NJWPA, any claim that was asserted in the Wage-Hour Lawsuit, and any and all claims for monetary recovery from a waived claim, whether brought in a lawsuit or by an administrative agency, including, but not limited to, back pay, front pay, loans, liquidated, compensatory, and punitive damages, and attorneys' fees, experts' fees, disbursements, and costs.

Settlement Agreement at ¶ 4. The Parties' release permissibly limits the scope of waiver and release provisions to claims so that "[n]othing in this Settlement Agreement shall constitute a waiver of any rights to enforce the terms of this Settlement Agreement or waiver of claims that cannot be legally waived or of claims that arise after the date this Settlement Agreement is executed." *See Singleton,* 2014 WL 3865853, at *9 (D.N.J. Aug. 6, 2014) (finding waiver language "broad" yet "appropriate"). Accordingly, the release of claims is legitimately limited to further the implementation of the FLSA, and should be approved by this Court.

## V. CONCLUSION

For the reasons set forth above, the Parties respectfully submit that the Court should enter their proposed Order granting the instant Motion and approving the Parties' FLSA settlement in its entirety.

Dated: January 28, 2020                             Respectfully submitted,

By: */s/ Seth D. Kaufman*                           By: */s/ David J. Cohen*
    Seth D. Kaufman                                    David J. Cohen
    Fisher & Phillips LLP                               STEPHAN ZOURAS, LLP
    The New York Times Building                         604 Spruce Street
    620 Eighth Avenue, 36th Floor                       Philadelphia, PA 19106
    New York, NY 10018                                  (215) 873-4836
    (212) 899-9975

    *Counsel for Defendants*                            James B. Zouras
                                                        Ryan F. Stephan
                                                        Andrew C. Ficzko

STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
(312) 233-1550

*Class Counsel*